**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael MOORE, Defendant–Appellant.**

**No. 89–2669.**

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1990.

Decided July 19, 1991.

Patrick J. King, Jr., Office of the U.S. Atty., Crim. Div. and Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Martin S. Agran, Agran & Agran, Chicago, Ill., for defendant-appellant.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Michael Moore appeals his convictions for robbery of a postal employee, through the use of a dangerous weapon, thus putting the postal employee's life in jeopardy, in violation of 18 U.S.C. § 2114 and for possession of a firearm after conviction for an offense carrying a sentence greater than one year in violation of 18 U.S.C. § 922(g). We affirm.

## I. FACTS

Michael Moore and Ronald Miles were subjects of a two-count indictment charging each of them with one count of robbery of a postal employee, that put the employee's life in jeopardy by use of a dangerous weapon, in violation of 18 U.S.C. § 2114, and one count of possession of a firearm after conviction of an offense with a sentence greater than one year in violation of 18 U.S.C. § 922(g).[1] Moore proceeded to

---

1. 18 U.S.C. § 2114 provides:

"Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous

weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years."

18 U.S.C. § 922(g) provides, in relevant part:

"(g) It shall be unlawful for any person—
(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

\* \* \* \* \* \*

to ship or transport in interstate or foreign commerce, or possess in or effecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

trial, was found guilty on both counts and sentenced to twenty years imprisonment for the postal armed robbery offense and twenty-five years confinement for the firearms offense, with the sentences to run concurrently with one another and concurrently with a prison sentence previously imposed in an unrelated case.

Diane Brinkmeyer, an employee of E & S Liquor Store, Dixmoor, Illinois, testified at trial that Michael Moore and Ronald Miles entered the liquor store at approximately 10:00 a.m. on May 9, 1987, and purchased various items including three hats, a bottle of orange juice and a bottle of Martell (cognac). Brinkmeyer's contact with the defendant Moore was extensive as she described a lengthy exchange with Moore in which Moore hassled her wanting a discount for the hats. Brinkmeyer also stated that after Moore and Miles left, she had a further encounter with Moore when Moore returned to obtain a lottery ticket. In this conversation Moore apologized to Brinkmeyer for his earlier conduct. Brinkmeyer described Moore and Miles as black males and stated that Miles was taller and more darkly complected than Moore. She stated Miles had a scruffy beard while Moore wore a beige colored sweater and a tight crocheted hat. Brinkmeyer identified Moore in court as the individual who wore the beige colored sweater and tight crocheted hat at the liquor store.

At about 11:00 a.m. the same morning, the Bedford Park Post Office, Bedford Park, Illinois was the scene of an armed robbery. Flora Gaitor, who was working as a window clerk, testified that two men entered the Post Office and the taller of the two approached Gaitor's window and asked to purchase a book of stamps. While Gaitor made change for the purchase, the taller man grabbed her arm and displayed a gun. The other man went over the counter while the armed man told Gaitor to open the drawers of two unoccupied clerk windows. After she explained that she did not have keys to open these drawers, the armed man ordered her to go into

the back room. At trial Gaitor testified that the armed man was a tall black man wearing brown clothes and a cap. Gaitor further testified that the other man involved in the Post Office armed robbery was shorter and was also black, had a lighter complexion, and was wearing a cap under a nylon stocking he wore over his head. Following the armed robbery, Gaitor's cash drawer was audited and found to be short $110.81 in cash and stamps. Several money orders were also missing including one with a serial number ending with the numbers 026. A postal customer, Thomas Leonchik, arrived at the Post Office just as the two men were leaving. Leonchik described them as two black males, one taller than the other and stated that the taller man had a mustache and a little beard. Leonchik stated that the two drove away in a blue or gray Buick.

About 12:00 noon, following the Post Office armed robbery, Miles and Moore returned to the E & S Liquor Store in Dixmoor and made another purchase of Martell and orange juice. On a third occasion at about 2:30 p.m., the two returned to the liquor store. Store employee Diane Brinkmeyer testified that after Moore and Miles entered the store, Moore stood near the door and Miles walked to the back of the store. When Moore began jiggling his keys, Miles approached the counter and grabbed Brinkmeyer, pointed a gun at her and told her to freeze. Miles told Brinkmeyer to open her cash register and he removed the money from it. Another witness, a man who lived on the block near the liquor store, testified that he observed two men enter a gray Buick and drive away from the liquor outlet.

After receiving a report of the liquor store armed robbery and a description of the getaway car, police pursued the automobile. During a high speed chase Moore lost control of the car and exited after it crashed into a house. Miles, armed, exited the automobile and attempted to flee but was apprehended a short distance from the

Miles entered into a plea agreement and pled guilty to the firearms count. Prior to Moore's trial, as part of Miles' plea agreement, the postal armed robbery count was dismissed against Miles. .

car and arrested. Moore got out of the car, ran a short distance, was ordered to stop, and was taken into custody.

Initially, both robbers Moore and Miles were transported to the Calumet Park Police Department and then transferred to the Dixmoor Police Department. While at the Dixmoor Police Department, Miles gave a written statement to Dixmoor Police Detective Michael Morgan. In his statement Miles stated that he did not meet Moore until after the postal armed robbery had occurred, further that Moore did not know that Miles was going to rob the liquor store and he forced Moore to drive the car in the escape following the liquor store armed robbery.

Moore owned the getaway car. Following the arrest of Moore and Miles, the police seized the getaway vehicle, searched it and recovered cash, stamps, postal money orders including one with serial number 026, a Martell bottle, a bottle of orange juice,[2] a nylon stocking and hats. At trial Flora Gaitor, the Post Office employee, identified the nylon stocking taken from the car as being similar to the one used in the robbery and the gun seized from Miles at the time of his arrest as similar to the stocking and gun that were used in the armed robbery. Gaitor also testified that the stamps taken from the car were the same type that she was selling in the Post Office at the time of the armed robbery. In addition, Gaitor had money orders in her drawer to sell and one had a serial number ending with 026, corresponding to the one found in Moore's car. At trial Diane Brinkmeyer identified various items seized from Moore's automobile as being like the items she sold to Moore and Miles. The half pint bottle of Martell (cognac) was identified as the size and brand Brinkmeyer had sold Moore and Miles at noon. The bottle of orange juice was the same type and size purchased from the liquor store and reflected the same price as that the liquor store was charging for orange juice on the date of the robbery. In addition, hats found in the automobile were of the type

she sold to the defendants in their visits to the liquor store on May 9, prior to the armed robbery. In addition, Brinkmeyer identified the gun recovered from Miles as being similar to the one used in the liquor store hold-up.

Following the arrest of Moore and Miles a line-up was conducted at the Dixmoor, Illinois Police Station on May 9, 1987. Flora Gaitor, who witnessed the crime, participated as a witness to the line-up and stated that one of the men in the (6 person) line-up looked like one of the robbers but that she could not be sure. The man whom Gaitor tentatively identified at the line-up was Ronald Miles. Postal customer Thomas Leonchik went to the Dixmoor Police Station shortly after the crime. While there he identified the car in police custody that had been seized from the defendants as the one the robbers use to flee the crime scene. At the same time, Leonchik selected two pictures from a set of (6) photographs of the participants who appeared in the line-up that Gaitor had earlier viewed as portraying the taller of the two men he observed leaving the Post Office. He pointed out that a photograph of Miles in an array of six looked like the person he saw flee from the Post Office, but that the beard in Miles' photographs was insufficiently heavy.

## II. ISSUES PRESENTED

(1) Did the trial court commit an abuse of discretion in failing to ask jurors questions concerning the particular subject matters the defendant Moore requested; (2) Was the trial court's action in excluding the contents of Miles' post-arrest statement as inadmissible hearsay and the refusal of Moore's attempt to cross-examine a police detective concerning the contents of this statement proper; (3) Did the district court err in admitting in evidence Moore's palm print obtained by a postal inspector and a latent palm print of Moore that was lifted from a money order stolen in the postal

---

**2.** It is unclear from the record whether the bottle of orange juice contained orange juice at the time it was seized from Moore's automobile or whether the bottle was empty. We will refer to it as a bottle of orange juice, throughout the record.

armed robbery; (4) Did the trial court commit error in admitting into evidence the pre-trial tentative identifications of Miles at the Bedford Park Post Office made by postal clerk, Flora Gaitor and customer, Thomas Leonchik; (5) Was the trial judge's action in excluding evidence concerning the reasons for Moore's release from custody shortly after his arrest proper; (6) Did the district court properly exclude from evidence a memorandum an Assistant United States Attorney authored on the question of Moore's pre-trial release; (7) Did the trial court err when it conducted a conference in which Miles asserted his constitutional right against self-incrimination outside of the presence of the jury and Moore; (8) Was there sufficient evidence to support the jury's verdict that found Moore guilty of the postal armed robbery and firearms offenses?

## III. VOIR DIRE

Moore argues that the court denied him a basis "for a reasonably knowledgeable exercise of the right to challenge"[3] jurors when it refused to read to the venire of prospective jurors a list of prosecution witnesses for purposes of inquiring whether any of the jurors knew the witnesses, when it declined to explore "whether or not the jurors would be prejudiced just because they learned that Mr. Moore has a prior conviction," and when it failed to ask "whether any of [the jurors'] close family or friends had been victims of crime."

Rule 24(a) of the Federal Rules of Criminal Procedure provides:

"**(a) Examination.** The court may permit the defendant or the defendant's attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or the defendant's attorney and the attorney for the government to supplement the examination but such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional

questions by the parties or their attorney at it deems proper."

In *United States v. Sababu,* 891 F.2d 1308, 1325 (7th Cir.1989), we observed:

"[W]e have repeatedly held that a judge has broad discretion in determining what questions may be asked during *voir dire.* We have stated that '[t]his court will not find that a trial court abused its discretion in conducting *voir dire* where there is sufficient questioning to produce, in light of the factual situation involved in the particular trial, some basis for a reasonably knowledgeable exercise of the right of challenge.' "

(quoting *United States v. Hasting,* 739 F.2d 1269, 1273 (7th Cir.1984), *cert. denied,* 469 U.S. 1218, 105 S.Ct. 1199, 84 L.Ed.2d 343 (1985)) (citations omitted). In construing this rule we have emphasized that "[w]e do not deem 'as it deems proper' to give a trial judge unlimited discretion to ignore proposed questions nor to permit arbitrary refusal to put such questions." *United States v. Lewin,* 467 F.2d 1132, 1138 (7th Cir.1972). "If this right [to exercise a peremptory challenge] is not to be an empty one, the defendants must, upon request, be permitted sufficient inquiry in the background and attitudes of the jurors to enable them to exercise intelligently their peremptory challenges...." *United States v. Dellinger,* 472 F.2d 340, 368 (7th Cir.1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973). "[O]ur ... 'ultimate inquiry is whether there is any substantial likelihood that the defendants were denied a fair trial.' " *United States v. Robinson,* 832 F.2d 366, 371 (7th Cir.1987) (quoting *United States v. Balistrieri,* 779 F.2d 1191, 1214 (7th Cir.1985), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1739, 100 L.Ed.2d 203 (1988)).

 Moore contends that the trial court's refusal to read a list of the prospective witnesses to the jury was an abuse of discretion. We disagree and have observed that:

"The law is clear ... that the Constitution does not require that a defendant in a noncapital case be provided with a list

---

**3.** *United States v. Sababu,* 891 F.2d 1308, 1325 (7th Cir.1989).

of all prospective government witnesses. Nor does Rule 16 entitle a defendant to this information. In fact, Congress rejected a proposal that would have required the government and the defendant to exchange the name and addresses of their witnesses three days before trial....

Although the defendant in a criminal case has no right to a list of the government's witnesses to be called at trial, this court has held that a district court has the authority to require the government to provide the defendant with such a list.... We have further held that a court's decision whether or not to order the government to produce a list of its witnesses is subject to review under an abuse of discretion standard."

*United States v. Napue,* 834 F.2d 1311, 1317, 1318 (7th Cir.1987) (citations omitted). Although Moore filed a discovery request for the names of witnesses "whose testimony would be favorable to the defendant in any way or consistent with his innocence" and "whose testimony would contradict or be inconsistent with the expected testimony of any witness for the government," or had been "interviewed by the government who had knowledge of the activity alleged in the indictment or was present when the events in question occurred and who failed to implicate the defendant in this activity," the request was not an all-inclusive demand for each and every government witness that he now argues should have been disclosed to the jury. As stated above, it is clear that a defendant has no absolute right to disclosure of the government's witnesses unless the court, in the exercise of its discretion upon a proper motion, orders such disclosure. It follows that it is within the discretion of the trial court to determine the scope of the voir dire questioning of jurors, particularly when the defendant fails to demonstrate how the court's refusal to read a witness list to the jury deprived him of a fair trial. Thus, we conclude that the court's exercise of its discretion in refusing to give the names of the government witnesses to the jury, without a showing of need was proper, and thus Moore's right to a fair trial was not infringed.

Moore further contends that the court should have explored with potential jurors the questions of whether persons they knew had been victims of crime and whether Moore's prior conviction record might affect their consideration of his case. With respect to the issue of crime victim status, the judge asked whether the jurors themselves had been victims of crime and previously told the jurors to volunteer any relevant information without waiting for a specific question, thus allowing an opportunity for the jurors to offer information concerning whether any friends or relatives had been crime victims. Although the question of Moore's prior convictions was not covered in voir dire, the court instructed the jury concerning the limited relevance of Moore's conviction at the close of the evidence: "You have heard evidence that the defendant has been previously convicted of a felony. This evidence may be considered by you only for the question of whether the defendant possessed a firearm while being a convicted felon." Matters relating to the questioning of prospective jurors in voir dire are properly left to the discretion of the trial judge and because Moore has failed to demonstrate how the court's exercise of its discretion specifically prevented him from possessing "some basis for a reasonably knowledgeable exercise of the right of challenge," *Hasting,* 739 F.2d at 1273, we are of the opinion that Moore's right to a fair trial was not infringed when the court refused to question the prospective jurors in the manner Moore requested.

## IV. EXCLUSION OF MILES' POST–ARREST STATEMENT

Moore asserts that the trial court erroneously excluded from evidence a post-arrest unsworn statement of his accomplice, Ronald Miles, given shortly after his apprehension and further that he improperly prohibited him from cross-examining Dixmoor Police Detective Michael Morgan concerning the contents of the statement. In the statement, given to Detective Morgan immediately after his arrest on May 9, 1987, Miles gave information concerning the arm-

ed robbery of the liquor store. He recited that he met Moore after the postal armed robbery had occurred, declared that he failed to tell Moore that he was going to rob the liquor store and asserted that he forced Moore, at gun point, to drive the getaway vehicle following the liquor store armed robbery. During Miles' court hearing on his plea of guilty to the firearms count of the indictment, he recanted, under oath, the information in the statement given to the police detective concerning his previously stated alleged coercion of Moore to drive the getaway car after the liquor store crime.[4] After this recantation the only part of Miles' statement remaining was that he met Moore after the postal armed robbery had taken place and that he did not inform Moore that he intended to rob the liquor store.

### A. Admission of the Statement under Federal Rule of Evidence 804(b)(3)

At trial Moore requested that Miles' statement be admitted as a declaration against interest under Federal Rule of Evidence 804(b)(3).[5] The trial court refused to admit the statement, ruling that there had been an insufficient demonstration of "reliability or trustworthiness" since Miles had recanted a significant part of the statement and that the document's admission might confuse or mislead the jury.

■ "We review the district court's decision that a particular hearsay statement is admissible under Rule 804 only for an abuse of discretion." *United States v. Doerr*, 886 F.2d 944, 954 (7th Cir.1989). Under the three part test we set forth in

*United States v. Garcia*, 897 F.2d 1413, 1420 (7th Cir.1990), for determining the admissibility of a statement under Rule 804(b)(3), "a court must find that, (1) the declarant's statement was against the penal interest of the declarant, (2) corroborating circumstances exist indicating the trustworthiness of the statement, and (3) the declarant must be unavailable." *See also United States v. Harty*, 930 F.2d 1257, 1263–64 (7th Cir.1991). Because Miles refused to testify asserting his Fifth Amendment right against self-incrimination, it follows that he was "unavailable" to testify under the third prong of the *Garcia* test. *See Garcia*, 897 F.2d at 1420. Further, the part of the statement concerning the liquor store armed robbery and getaway criminally implicated Miles and, thus, was against his penal interest under the first prong of the *Garcia* test. Thus, we need only discuss the second prong of the *Garcia* test, i.e. whether there are corroborating circumstances demonstrating the statement's trustworthiness. *See Harty*, 930 F.2d at 1263.

■ "[A] trial court's determination of the trustworthiness of an out-of-court statement should be upheld unless the finding is clearly erroneous." *Garcia*, 897 F.2d at 1421. Several factors support the trial court's conclusion that the statement lacked trustworthiness. Miles under oath, during the court hearing on his guilty plea, recanted his statement that he had coerced Moore to drive the getaway car after the liquor store robbery. In addition, contrary to Miles' statement's allegation that he met

---

**4.** Miles testified at his hearing: "I didn't force Moore. I didn't force him or anything like that, nor did I pull a pistol on him and make him drive the car away, or did I take fifty dollars from him that he—that I seen on one of the statements that he said that I did. I didn't do none of that."

**5.** Federal Rule of Evidence 804(b)(3) provides: "**(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

 * * * * * *

 **(3) Statement against interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to sub-

ject the declarant to civil and criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Moore makes clear on appeal that the only sections of Miles' statement that Moore believes satisfy Rule 804(b)(3) are those concerning the liquor store robbery and getaway since only in those passages does Miles inculpate himself.

Moore for the first time on May 9, 1987, at a time after the postal armed robbery, the testimony of liquor store employee Diane Brinkmeyer established that Miles and Moore were together at the liquor store approximately an hour prior to the postal armed robbery. This testimony was corroborated with the discovery of hats of the type purchased prior to the postal armed robbery in Moore's car. Because Miles involvement with Moore prior to the postal armed robbery is of significance, this contradiction between Miles' statement and the trial testimony casts serious doubt upon Miles' credibility and thus the statement's reliability. As pointed out earlier, Miles' post-arrest statement was unsworn. Since Miles' statement, given immediately after his arrest, was recanted in significant part during the court proceeding and a material difference existed between the facts alleged in the statement and those presented at trial, we conclude that the trial court did not commit error when refusing to admit the statement under Federal Rule of Evidence 804(b)(3) after finding that it lacked trustworthiness.

### B. Admission of the Statement under Federal Rule of Evidence 804(b)(5)

■ Moore also alleges that the statement should have been admitted under the "catch all" hearsay exception of Federal Rule of Evidence 804(b)(5).[6] In order for a hearsay statement to be admissible under Rule 804(b)(5), the statement's proponent must demonstrate that the declarant is unavailable and the statement contains " ' "circumstantial guarantees of trustworthiness" equivalent to those inherent in the more specific exceptions provided under

Rule 804(b)(1)–(4).' " *Doerr*, 886 F.2d at 954 (quoting *United States v. Snyder*, 872 F.2d 1351, 1354 (7th Cir.1989)). Miles' invocation of the Fifth Amendment privilege against self-incrimination established his unavailability, *Garcia*, 897 F.2d at 1420. But, for the same reasons we determined that his statement lacked trustworthiness under Rule 804(b)(3), detailed in Section IV–A, *supra*, (the facts that the statement was unsworn, had been recanted in significant part and contradicted other evidence in the trial record), we also hold that it lacked the "circumstantial guarantees of trustworthiness" necessary under Federal Rule of Evidence 804(b)(5). Thus, the trial court did not commit error in refusing to admit Moore's hearsay statement under Rule 804(b)(5).

■ Moore's Rule 804(b)(5) argument is further flawed because he never requested admission of this statement on the basis of this Rule in the trial court. Because Moore failed to raise the specific ground he now urges for admission of this evidence, he "has waived this issue on appeal unless the [exclusion of the statement] was plain error." *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988). "The plain error doctrine allows an appellate court to correct errors that were not objected to at trial if the defendant can demonstrate that he or she probably would have been acquitted but for the [error]." *Id.* at 1443. As demonstrated in Section X–A, *infra*, the overwhelming nature of the evidence against Moore excludes even a *possibility*, much less a *probability*, that he would have been acquitted if the statement had been admitted.

---

**6.** Federal Rule of Evidence 804(b)(5) reads:
"**(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
\* \* \* \* \* \*
**(5) Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having *equivalent circumstantial guarantees of trustworthiness,* if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable ef-

forts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse parties sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant."
(Emphasis added).

### C. Cross-examination of Morgan

Moore further asserts that his Sixth Amendment Confrontation Clause rights were violated when the trial court refused to permit him to cross-examine Dixmoor Police Detective Michael Morgan concerning the substance of the statements Miles made to Morgan following his arrest. On direct examination the government attorney asked Detective Morgan the general question "what did you do that night" (the night of the date Miles and Moore were arrested). Morgan unexpectedly volunteered: "I eventually spoke with Ronald Miles and Michael Moore and asked them what their involvement was in our armed robbery." The government attorney asked no further questions concerning the content of the statement Miles or Moore made and Detective Morgan provided no further information on this issue. Moore asserted that the information Detective Morgan volunteered opened the door for him "to go into exactly what those statements were" during cross-examination. The court denied Moore's request stating: "The Government didn't go into what Mr. Moore or Mr. Miles said at that time. They merely elicited from the witness the fact that there was a conversation, but that's not enough to open the door to the contents of it."

In *United States v. Williams*, 858 F.2d 1218, 1223 (7th Cir.1988), *cert. denied*, 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989), we set forth the standards relevant to claims that cross-examination restrictions violate Confrontation Clause rights:

" 'The confrontation clause promotes accuracy in the trial process by ensuring that the trier of fact has a satisfactory basis for evaluating the truth.' *Barker v. Morris*, 761 F.2d 1396, 1399 (9th Cir. 1985). The right to confront witnesses guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to *whatever extent the defense might wish.* *Delaware v. Fensterer*, 474 U.S. 15, 18, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). 'Trial judges retain wide latitude insofar as the confrontation clause is concerned to impose reasonable limits on … cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety or interrogation that is repetitive or marginally relevant.' *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1985). Thus, the sufficiency of cross-examination turns on 'whether the jury had sufficient information to make a discriminating appraisal of the witness' motive and bias.' *United States v. Rodgers*, 755 F.2d 533, 548 (7th Cir.), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985)."

(Emphasis added).

As we observed in *United States v. Diaz*, 876 F.2d 1344, 1349–50 (7th Cir.1989):

"[W]e examine the limitations placed upon specific instances of cross-examination in the context of the entire case. 'In order to determine whether the restrictions placed on the right to cross-examine a witness rise to the level of a constitutional deprivation, we "look to the record as whole … and to the alternative means open to impeach the witness." ' *United States v. Cameron*, 814 F.2d 403, 406 (7th Cir.1987) (quoting *United States ex rel. Blackwell v. Franzen*, 688 F.2d 496, 500–01 (7th Cir.1982), *cert. denied*, 460 U.S. 1072, 103 S.Ct. 1529, 75 L.Ed.2d 950 (1983) (citations omitted)). We also recognize that

'the district court's discretion in controlling the extent of cross-examination is broad. For cross-examination has no natural limits, and the trial judge must therefore exercise judgment in deciding when the point of diminishing returns has been reached, or passed—a judgment that will depend on the particulars of each case, and on such unreviewable imponderables as the judge's assessment of the jury's comprehension and attention span.'

*United States v. Herrera–Medina*, 853 F.2d 564, 566 (7th Cir.1988) (citation omitted)."

■ We agree with the ruling of the trial court that the detective's volunteering of information that he merely had a conversation with Miles about the armed robbery, without stating anything whatsoever concerning the content of the statement, is insufficient to open the door to cross-examination concerning the information contained in a statement previously excluded as inadmissible hearsay. *See generally* Federal Rule of Evidence 611(b) ("Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness."). Moore was permitted to cross-examine Detective Morgan thoroughly on the information he gave during his testimony and we are convinced that the " 'jury had sufficient information to make a discriminating appraisal of the witness's motive and bias.' " *Williams*, 858 F.2d at 1223 (quoting *Rodgers*, 755 F.2d at 548). It was within the sound discretion of the district judge to determine whether the information in Miles' statement would be helpful to the jury, and, after review of the record, we hold that he did not abuse his discretion in deciding that it would not be helpful to the jury. Thus, his limitation of the scope of cross-examination was proper and not in violation of Moore's rights guaranteed under the Confrontation Clause of the Sixth Amendment.

## V. ADMISSION OF PALM PRINT EVIDENCE

Moore asserts that the trial court erred in admitting Moore's palm print taken by a United States Postal Inspector and a latent palm print, identified as that of Moore, found upon a postal money order allegedly stolen during the postal armed robbery.

Moore contends that the palm print impression given to the Postal Inspector should not have been admitted because the inspector testified, based on his notation on the palm print record, that the prints were taken at the Main Post Office in downtown Chicago on May 9, 1987. Moore argues that the palm print could not have been taken on that date, which was the date of the crime and Moore's arrest, because Moore was confined in the Calumet Park and Dixmoor police stations from the time of his arrest on the afternoon of May 9 until May 10 and there is no record of Moore leaving the police stations on these dates. The inspector who took Moore's palm print unequivocally identified Moore in court as the person who gave the palm prints and admitted that he had no recollection of the exact date the palm prints were taken. It would appear that this was an improper notation of the date of the fingerprinting, a matter going only to weight of the evidence rather than its admissibility.

■ "A trial court's decision to admit real evidence will not be reversed unless it has abused its discretion." *United States v. Wheeler*, 800 F.2d 100, 106 (7th Cir. 1986). Authentication of physical evidence only requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." Federal Rule of Evidence 901(a). The inspector's testimony identified Michael Moore as the subject who gave him the palm print at the Postal Inspector's division headquarters in Chicago. This testimony more than satisfies the requirement of sufficient authentication of the fact that the palm print impression the inspector took contained Moore's palm prints to permit its reception in evidence in spite of the fact that it may have not been given on the date inscribed on the palm print card. Thus, the district court properly exercised its discretion in admitting the palm print which the Postal Inspector took.

■ Moore also argues that his latent palm print on the postal money order should not have been received in evidence since there was no proof that the palm print was placed on the money order during the course of the postal armed robbery. This argument is without merit, for there is no question that Moore's palm print on the stolen money order is relevant evidence as it helps demonstrate that he actively participated in the crime and in fact handled the proceeds of the postal armed robbery. The money order was found in Moore's car, just hours after the postal armed robbery and after Moore had been taken into custody,

making it unlikely that Moore touched the money order at any time other than during the armed robbery in which he gained possession of the instrument and in the flight therefrom. The money order had gone from the postal drawer and into Moore's possession during the robbery and police seized and retained this item following the time they took Moore in custody. While the jury was free to find that Moore might have touched the stolen money order at another time, as argued, it was within the trial court's discretion to admit the palm print on the basis of the probability that the print was placed on the money order during the armed robbery and subsequent flight.

■ Further, even if the admission of the palm print were error, Moore failed to preserve the issue for review: "To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection." *Wynn*, 845 F.2d at 1442. Moore failed to object to the admission of the palm print in the trial court. "As a result, [Moore] has waived this issue on appeal unless the admission of [the evidence] was plain error." *Id.* Under the "plain error" standard of review it is necessary for Moore to "demonstrate that he ... probably would had been acquitted but for the erroneously admitted evidence." *Id.* at 1443. In view of the overwhelming evidence set forth in Section X–A, *infra*, omitting this evidence would not have led to a probability of acquittal. Thus, we hold that the trial court committed no error and certainly not plain error in admitting Moore's latent palm print found on the stolen money order.

## VI. ADMISSION OF TESTIMONY TENTATIVELY IDENTIFYING MILES AT THE POST OFFICE DURING THE ARMED ROBBERY

■ The trial court received evidence from Flora Gaitor, a postal clerk at the Bedford Park Post Office, who identified a man in a pre-trial line-up as someone who looked like Miles although she was unable to make a positive identification. Also testimony was admitted that Thomas Leonchik, a customer at the Post Office, immediately after the armed robbery, selected two photographs from an array of pictures of the persons who had previously been in the line-up Gaitor had observed, as representing one of the persons involved in the postal armed robbery. One of the photographs Leonchik selected portrayed Miles. The tentative identifications of Miles affected Moore because the identification of Miles as one of the postal armed robbers made it more likely that Moore, who was seen with Miles both immediately before and after the postal armed robbery, was Miles' unidentified accomplice. Moore now argues that the trial court improperly admitted this evidence because the tentative nature of the identifications resulted in their prejudicial impact outweighing their probative value under Federal Rule of Evidence 403. Because Moore failed to object to the admission of this evidence at trial, he has waived his objection and our review is governed by the plain error standard. *See Wynn*, 845 F.2d at 1442.

■ Initially, we note that there was no error in the admission of the tentative identification testimony. In reviewing the admission of evidence under Rule 403, "[i]t is well established that 'a trial judge's assessment of relative probative value and unfair prejudice is generally accorded great deference because of his first-hand exposure to the evidence and his familiarity with the course of the trial proceeding.'" *United States v. Briscoe*, 896 F.2d 1476, 1498 (7th Cir.) (quoting *United States v. Liefer*, 778 F.2d 1236, 1244 (7th Cir.1985) (citation omitted)), *cert. denied*, ——— U.S. ———, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990).

The first question under Rule 403 is whether the identification evidence had probative value. The tentative identification of Miles as a participant in the postal armed robbery made it more likely that Moore, who was seen in Miles' company both immediately before and after the armed robbery, was the unidentified second man who accompanied Miles in the postal armed robbery. The identification evidence was probative because, while equivocal, it none-

theless "sheds light on an element of the crime." *United States v. Blanton,* 884 F.2d 973, 977 (7th Cir.1989). Furthermore, there was other evidence of Moore's involvement in the postal armed robbery including Moore's driving of the getaway car, the identification of his car as the one used in his flight from the liquor store at the time of his arrest and the seizure from Moore's car of the stolen money order (serial number 026) with Moore's palm print, cash, the roll of postage stamps, a Martell cognac bottle, bottle of orange juice and caps of the type Moore and Miles purchased at the liquor store[7] and a nylon stocking like that used by Miles' postal armed robbery accomplice. In addition, the gun seized from Miles was of the type used in the postal robbery.

The remaining question is whether the danger of unfair prejudice outweighed the evidence's probative value. Although the tentative nature of the identifications of Miles impacts on the evidence's probative value, the defendant had an opportunity to thoroughly cross-examine the witnesses who made the identifications and remained free to point out defects, if any, in the identifications in cross-examination and in his closing argument to the jury. We see nothing in the tentative identification evidence that would mislead the jury, confuse the issues or otherwise *unfairly* prejudice Moore since it was properly referred to and received as tentative. The evidence could be thoroughly attacked on cross-examination or during closing argument. It was up to the jury to determine what weight they would attribute to it.

Additionally, under the applicable "plain error" standard of review, the exclusion of this tentative identification evidence would not have likely resulted in Moore's acquittal. As revealed in the sufficiency of the evidence discussion in Section X-A, *infra,* the evidence of Moore's guilt was overwhelming. Thus, the district court did not commit plain error in admitting the tentative identification testimony.

**7.** The bottle of orange juice had a price marking that was the same price as that charged at the

## VII. EXCLUSION OF TESTIMONY CONCERNING MOORE'S RELEASE SHORTLY AFTER HIS ARREST

On the day before trial the government moved *in limine* to prevent Moore from introducing testimony "to the effect that the Dixmoor Police released Moore from custody on May 9, 1987 without charging him with a crime." Moore argued that Dixmoor Police Detective Michael Morgan could be considered an expert in the fields of criminal law and case investigation under Federal Rule of Evidence 702 and that he wished to ask Moore the following question: "Based upon your opinion as an expert in the field of criminal law and the investigation of cases, do you have an opinion as—did you have an opinion as to whether or not Michael Moore should be charged with a felony—with armed robbery?" The trial court refused to receive this evidence holding that the expert testimony Moore proffered under Rule 702 should be excluded as irrelevant under Rules 401 and 403 of the Federal Rules of Evidence. The district court ruled: "It is not relevant under Rule 401 that following detention the Dixmoor Police Department conducted an investigation and later released Moore." The court went on to find that, even if it were to conclude that the evidence was relevant under Rule 401, the testimony would be inadmissible under Rule 403 because "the probative value would be essentially outweighed by the danger of unfair prejudice."

"Trial courts have broad discretion under [Rule 702] to admit or exclude evidence, and their rulings will not be reversed absent an abuse of that discretion." *United States v. Hudson,* 884 F.2d 1016, 1023–24 (7th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990). A law enforcement officer's opinion concerning whether Moore should be charged with a crime at a very early stage of the criminal investigation is relevant only to the

liquor store on the crime date.

questions of the terms of bail and of whether there was probable cause to charge the defendant at that particular early phase. This determination is of no relevance to the question of whether the facts, as fully developed during the course of the continuing investigation and presented to the jury at trial, establish a defendant's guilt of the crime. Because this evidence "will not contribute to [the jury's] understanding of the particular dispute," *Hudson*, 884 F.2d at 1024, the trial court appropriately excluded it from the record.

## VIII. EXCLUSION OF THE BOND MEMORANDUM

■ Moore attempted to introduce a memorandum Assistant United States Attorney Steven Crocker wrote to Chief Judge Grady, in preparation for a bond hearing, that sought $5,000 cash bond because of the serious nature of the charge and the possibility of flight. The bench memorandum also explained that pre-trial detention was not sought since Moore was not the gunman, had not attempted to flee during the time period of the investigation immediately before formal charges and there was an absence of other violent acts. On appeal, Moore argues that this statement should have been admitted as an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(B) and (D).[8] Because Moore failed to raise this ground for the evidence's admission in the trial court,[9] we review this claim under the plain error standard. *See Wynn*, 845 F.2d at 1442.

Irrespective of whether the bond memorandum could qualify as an admission of a party opponent, there was no error in excluding it because the statements therein were irrelevant to the issue of Moore's guilt or innocence. A bond determination merely addresses the sufficiency of the evidence to hold the defendant for trial, his likelihood to flee the jurisdiction and the terms necessary to insure the defendant's appearance. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979); *United States v. Zylstra*, 713 F.2d 1332, 1337 (7th Cir.), *cert. denied*, 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983). In addition, the demanding "plain error" standard of review would require Moore to establish that he probably would have been acquitted if the memorandum had been admitted. Such a demonstration is not possible in light of the memorandum's lack of relevance to the issue of Moore's guilt or innocence. *See Wynn*, 845 F.2d at 1443.

## IX. MOORE'S ABSENCE FROM THE CONFERENCE WHERE MILES ASSERTED HIS FIFTH AMENDMENT RIGHT AGAINST SELF–INCRIMINATION

At the beginning of the third day of trial, just prior to Moore's arrival in the courtroom, the court held a conference between Moore's attorney, the government attorney, Miles and his attorney in open court outside the presence of the jury and the defendant Moore. When Moore's attorney explained to the court that he was going to call Miles as a witness for the defense, Miles' attorney advised the court that Miles would refuse to testify on the basis of his Fifth Amendment right against self-incrimination, a statement which Miles personally confirmed later in the conference. The court found there to be a reasonable basis for the exercise of the privilege against

---

8. Federal Rule of Evidence 801(d)(2) reads as follows:

 "**(d) Statements which are not hearsay.** A statement is not hearsay if—

 \* \* \* \* \* \*

 **(2) Admission by party-opponent.** The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or believe in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

9. In the trial court Moore urged that the memorandum was admissible as a public record under Federal Rule of Evidence 901, an argument he has abandoned on appeal.

self-incrimination and ruled that Miles need not testify. After the conference had ended and Moore had arrived in court, Moore's attorney informed the court that Moore was "dissatisfied with my representations as to what took place this morning concerning Mr. Miles" and requested that "Mr. Miles be brought ... in Court with his attorney, and that [Moore's attorney] be allowed to ask the same questions again in the presence of Mr. Moore." The questions would have related to Miles' assertion of his privilege against self-incrimination. The court denied Moore's request. Moore urges that the trial court violated his right to be present at all stages of trial under the Due Process Clause of the Constitution and his right to be present "at every stage of the trial" under Rule 43(a) of the Federal Rules of Criminal Procedure.[10]

■ Turning to Moore's constitutional claim, we observed in *United States v. Shukitis*, 877 F.2d 1322, 1329–30 (7th Cir. 1989):

"Although it is true that the right to be present at all stages of the criminal trial is recognized under the sixth and fourteenth amendments, *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486, 490 (1985), this right is not absolute. The constitutional right applies only to those proceedings where the defendant's 'presence has a relationship, reasonably substantial, to his ... opportunity to defend against the charge.' *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674, 678 (1934). A defendant does not have the right to be present 'when presence would be useless, or the benefit but a shadow.' *Id.* at 106–07, 54 S.Ct. at 332, 78 L.Ed. at 678 (Cardozo, J.). 'The Court also cautioned in *Snyder* that the exclusion of a defendant from a trial proceeding should be considered in light of the whole record.' *Gagnon*, 470 U.S. at 526–27, 105 S.Ct. at 1484, 84 L.Ed.2d at 490 (citations omitted)."

Many of the factors which led us to the conclusion that a defendant's presence was not constitutionally required during a conference between the attorneys and the court in *Shukitis* are likewise present here. As in *Shukitis*, Moore's presence "would not have aided the court in making ... a determination" concerning the legal issue of Miles' right to assert his privilege against self-incrimination. *Shukitis*, 877 F.2d at 1330. Furthermore, as in *Shukitis*, "the defendant's attorney was present during [the] conference[ ]." *Id.* Finally, Moore has failed to demonstrate how his absence from the conference prejudiced his defense. Miles' assertion of his privilege against self-incrimination had no bearing on the central issue of Moore's guilt or innocence. Thus, as in *Shukitis*, "we hold that the defendant did not have a constitutional right to be present at the ... conference[ ] because his presence was not required to ensure 'a reasonable opportunity ... to defend against the charge.'" *Id.*

■ With respect to Moore's position that Federal Rule of Criminal Procedure 43 required his presence at the conference, we disagree and have specifically observed in *United States v. Johnson*, 859 F.2d 1289, 1294 (7th Cir.1988), that "Fed.R.Crim.P. 43(c)(3) ... provides that a defendant's presence is *not* required '[a]t a conference or argument upon a question of law.'" (Quoting Fed.R.Crim.P. 43(c)(3)) (emphasis in original). The sole issue before the court during the conference, the propriety of Miles' exercise of his right of self-incrimination, was a question of law. Thus, under Fed.R.Crim.P. 43, Moore's presence was not required at the conference.

## X. SUFFICIENCY OF THE EVIDENCE

Moore argues that the evidence was insufficient to support either his postal armed robbery or firearms convictions. As we observed in *United States v. Herrero*, 893 F.2d 1512, 1531 (7th Cir.), *cert. denied*, —

---

10. Rule 43(a) provides:
"**(a) Presence Required.** The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."

U.S. ——, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990):

> " 'In evaluating [Haro's] sufficiency of the evidence challenge, we note that [he] bears a heavy burden. Initially, we "review all the evidence and all the reasonable inferences that can be drawn from the evidence in the light most favorable to the government." ' *United States v. Nesbitt,* 852 F.2d 1502, 1509 (7th Cir. 1988) (quoting *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984)). 'The test is whether after viewing the evidence in the light most favorable to the government, *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' *Pritchard,* 745 F.2d at 1122 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original))."

As we have also held:

> "A verdict will withstand a sufficiency of the evidence challenge unless there is no evidence from which the jury could find guilt beyond a reasonable doubt. *See United States v. Beverly,* 913 F.2d 337, 360 (7th Cir.1990); *United States v. Durrive,* 902 F.2d 1221, 1225 (7th Cir. 1990). In appeals of jury trials such as this case, we are obliged to ' "defer to reasonable inferences drawn by the jury and the weight it gave to the evidence. Likewise, we leave the credibility of witnesses solely to the jury's evaluation, absent extraordinary circumstances." ' *Beverly,* at 360 (quoting *United States v. Hogan,* 886 F.2d 1497, 1502 (7th Cir. 1989) (citation omitted)).... [W]e 'view the evidence in the light most favorable to the government and accept circumstantial evidence as support, even sole support, for a conviction.' "

*United States v. Caudill,* 915 F.2d 294, 297 (7th Cir.1990) (quoting *Durrive,* 902 F.2d at 1229). "[C]rimes ... may be proved entirely by circumstantial evidence. If the prosecution presents enough circumstantial evidence to support, beyond reasonable doubt, an *inference* that the defendants agreed among themselves to distribute drugs, a jury would be justified in convicting those defendants of conspiring together." *Unit-*

*ed States v. Townsend,* 924 F.2d 1385, 1390 (7th Cir.1991) (citation omitted, emphasis in original). " ' "Circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable." ' " *United States v. Grier,* 866 F.2d 908, 923 (7th Cir.1989). " 'If the government proves its case by circumstantial evidence, "it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt." ... The trier of fact is free to choose among various reasonable constructions of the evidence.' " *United States v. Radtke,* 799 F.2d 298, 302 (7th Cir.1986) (citation omitted). In *United States v. Briscoe,* 896 F.2d 1476, 1505–06 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990), we amplified upon the role circumstantial evidence can play in establishing a violation of a federal criminal statute:

> "Although the jury's verdict may not rest 'solely on the piling of inference upon inference ..., [t]he view that the prosecution's case must answer *all* questions and remove *all* doubts ... of course, is not the law because that would be impossible; the proof need only satisfy reasonable doubt.' [*United States v. Nesbitt,* 852 F.2d 1502, 1511 (7th Cir. 1988), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989) ] (emphasis in original and citations omitted). Indeed, '[j]uries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict.... While "[c]ommon sense is no substitute for evidence, ... common sense should be used to evaluate what reasonably may be inferred from circumstantial evidence." ' *Id.* (citations omitted)."

### A. The Postal Armed Robbery Conviction

█ There is an overwhelming amount of direct and circumstantial evidence in this record in support of the conclusion that Moore was involved in the postal armed robbery. Liquor store clerk Diane Brinkmeyer testified that Moore was in the com-

pany of Miles both immediately before and immediately after the time of the postal armed robbery. Moore's automobile was identified by a postal customer as the car utilized in the armed robbery. In addition, there was tentative identification of Miles as one of those perpetrating the postal armed robbery and testimony that another shorter, lighter skinned man participated in the armed robbery wearing a nylon stocking. After the postal armed robbery had occurred Moore was stopped after fleeing from police with Miles in his (Moore's) car, which was identified as the one used in the robbery. A search of the car revealed a stolen postal money order (serial number 026) with Moore's palm print upon it corresponding to the one Gaitor possessed immediately prior to the armed robbery, stolen postage stamps, a nylon stocking of the type worn by the person who accompanied Miles in the postal armed robbery and items purchased from the liquor store during Moore and Miles' first two visits to the store. The combination of the overwhelming direct and circumstantial evidence identifying Moore as one of the perpetrators of the postal armed robbery clearly permitted a jury to reasonably conclude that Moore participated in the postal armed robbery. Thus, the evidence was sufficient to support Moore's conviction on this count.

### B. Firearm Offense

Moore's challenge to the firearms offense is based upon the position that he cannot be held culpable for Miles' possession of a firearm in the postal and liquor store armed robberies because there is insufficient evidence to support a conclusion that Moore participated in either of these armed robberies with Miles. "In order to secure a conviction under [18 U.S.C. § ] 922(g)(1), the government must prove, beyond a reasonable doubt, the following: '(1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, and (3) that the firearm had travelled in or affected interstate commerce.'" *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir.) (quoting *United States v. Petitjean*, 883 F.2d 1341, 1347 (7th Cir.1989)), *cert. denied*, — U.S. —,

111 S.Ct. 272, 112 L.Ed.2d 227 (1990). Moore does not challenge the evidence supporting the conclusions that Moore and Miles both had previous felony convictions and that the involved firearm had traveled in or affected interstate commerce. Thus, this case turns upon whether the evidence supports a conclusion that Moore had possession of the firearm for purposes of 18 U.S.C. § 922(g)(1).

The government asserts that the evidence was sufficient to support Moore's conviction because he constructively possessed the weapon when he transported Miles to and from the armed robberies in his automobile and because he aided and abetted Miles' possession of the firearm during the liquor store and postal armed robberies. There can be little doubt that Miles had actual possession of the gun. He was identified as the individual wielding the firearm during the liquor store armed robbery. Miles was tentatively identified by two witnesses as the gunman in the postal armed robbery and this tentative identification of Miles as the postal armed robbery gunman was corroborated with the identification of Moore's automobile as the getaway car, Miles' flight from Moore's automobile immediately prior to his arrest and the seizure of postal armed robbery proceeds from Moore's automobile. Thus, Miles actually possessed a firearm on the occasion of the two robberies as well as in his flight from the getaway car at the time of his arrest, in violation of 18 U.S.C. § 922(g)(1).

Moore responds that he cannot be held liable for Miles' possession of a firearm either as a principal or under an aiding and abetting theory because the evidence does not support a conclusion that he was involved in either the postal armed robbery or the liquor store armed robbery. Thus, he argues, he cannot be held to have possessed the firearm or "aided or abetted" Miles' possession of a firearm during either of the two robberies.

Under 18 U.S.C. § 2(b): "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United

States is punishable as a principal." In driving the getaway car from the armed robberies of the Post Office and the liquor store, it is clear that Moore was a principal in these armed robberies. *Cf. United States v. Wilkins*, 659 F.2d 769, 773 (7th Cir.) ("The getaway is part of the robbery; therefore, the driver of the getaway car is a principal in the crime of robbery and not a mere accomplice after the fact.") (Case under 18 U.S.C. § 2113—bank robbery statute), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981). Furthermore, evidence supported the conclusion that Moore was an active participant in both the postal and liquor store armed robberies. We have held that a person can be convicted as a principal in an armed robbery even if "he was not actually holding the gun during the robbery." *United States v. Schultz*, 769 F.2d 431, 433 (7th Cir.1985) (Construing 18 U.S.C. § 2113—bank robbery statute).

■■■ A person can be liable for the possession of a firearm of another under a theory of constructive possession. *See United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir.1990) ("*Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.*") (emphasis in original), *cert. denied*, —— U.S. ——, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). In both of the armed robberies in which Moore and Miles were involved, Moore was aware that Miles possessed a weapon and of its use in the armed robberies. Thus, the jury could have properly convicted Moore on a constructive possession theory as a principal to the firearms offense based upon the facts that he was an integral part of the armed robberies, and thus, as principal to both armed robberies, he was aware of Miles'

possession of a weapon and of its use in the armed robberies and could be held to have willfully participated in this possession under 18 U.S.C. § 2(b). *See United States v. McAnderson*, 914 F.2d 934, 948 (7th Cir. 1990) (Upholding finding of constructive possession of weapon where the jury could reasonably conclude that a high ranking member of a gang "was aware of the violence that had been planned and knew that the weapons in the [other gang members'] possession would be used to commit these acts.").

■■■ The government further asserts that Moore was liable for the weapons charge as an aider or abettor. Although the jury was given an aiding and abetting instruction, the indictment did not specifically charge that Moore aided or abetted the weapons possession.[11] It is unnecessary that an indictment specifically charge aiding or abetting:

> "This court has previously held that the aiding and abetting charge under 18 U.S.C. § 2(a) 'need not be specifically pleaded and a defendant indicted for a substantive offense can be convicted as an aider and abettor' upon a proper demonstration of proof so long as no unfair surprise results. *United States v. Tucker*, 552 F.2d 202, 204 (7th Cir.1977). 'If the trial court determines that the evidence warrants an aiding and abetting instruction, it is immaterial, although preferable, whether 18 U.S.C. § 2 is actually charged in the indictment. An aider is punishable as a principal.' *United States v. Holleman*, 575 F.2d 139, 144 (7th Cir.1978)."

*United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir.1984). *Accord, United States v. Ruiz*, 932 F.2d 1174, 1180 (7th Cir.1991) ("[I]t is well-established that a defendant need not be charged separately with aiding

---

11. The firearms count of the indictment reads:
"On or about May 9, 1987, at Bedford Park, Dixmoor, and elsewhere in the Northern District of Illinois, Eastern Division,
RONALD MILES and
MICHAEL MOORE,
defendants herein, each having previously been convicted of a crime punishable by im-

prisonment for a term exceeding one year, did knowingly possess a firearm, namely a .38 caliber Smith & Wesson Colt revolver, serial number 8084, which had previously travelled in interstate commerce;
In violation of Title 18, United States Code, Section 922(g)."

and abetting for that theory of liability to be presented to the jury, so long as the evidence warrants the instruction and no unfair surprise results.... Moreover, '[b]ecause aiding and abetting does not constitute a separate crime, all indictments are to be read as if the alternative provided by the aiding and abetting statute, 18 U.S.C. § 2, is included therein.'") (quoting *Galiffa*, 734 F.2d at 312) (quotation and citations omitted). Thus, the jury, properly instructed concerning aider or abettor liability, was free to base Moore's liability on an aiding and abetting theory.

"One convicted as an aider and abettor may be punished as a principal." *United States v. Valencia*, 907 F.2d 671, 677 (7th Cir.1990). "We ... have endorsed Judge Learned Hand's definition of aiding and abetting, which requires that the alleged aider and abettor 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *United States v. Pino-Perez*, 870 F.2d 1230, 1235 (7th Cir.) (*en banc*) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938)), *cert. denied,* —— U.S. ——, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989).

"As this court stated in *United States v. Beck*, 615 F.2d 441, 448 (7th Cir.1980), the aiding and abetting standard has two prongs—association and participation. To prove association, the state must prove that the defendant had the state of mind required for the statutory offense; to prove participation, '[a] high level of activity need not be shown.... Instead, "there must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that [the] defendant committed an overt act designed to aid in the success of the venture."' *Id.* at 449 (citations omitted) (quoting *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978))...."

*Valencia,* 907 F.2d at 677. "[I]t is not necessary that the [aider or abettor] have knowledge of the particular means the principal and the crime uses to carry out

the criminal activity." *Beck,* 615 F.2d at 453. Thus,

"'[C]riminal liability under the aider or abettor statute results from the existence of "a community of intent between the [aider and abettor] and the [principal];" an aider or abettor is "liable for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded, although such consequences may not have been intended by him."'"

*United States v. Torres,* 809 F.2d 429, 433 (7th Cir.1987) (quoting *United States v. Austin,* 585 F.2d 1271, 1277 (5th Cir.1978)).

With respect to the "participation" prong, we have previously determined that the evidence was more than sufficient to demonstrate that Moore was an integral part of the postal armed robbery. Moore and Miles together removed the items from the custody of the Post Office without the consent of those in possession and control thereof through the use of a firearm and Moore's car was used as the getaway vehicle. Moore was identified as present with Miles during the subsequent liquor store armed robbery, and fleeing from the getaway vehicle at the scene of the crash and his arrest, his driving of the getaway car provided a basis for the jury to find that he committed an overt act designed to aid in the success of the liquor store armed robbery. In both the postal and liquor store armed robberies, Miles' possession of a gun was an important part of the success of the entire criminal venture. Thus, Moore's participation in the armed robbery venture clearly included his participation in Miles' illegal possession of a weapon that was a critical part of this criminal enterprise.

Turning to the "association" prong of the "aiding and abetting" test, it is necessary to demonstrate that Moore "shared the criminal intent of [Miles]...." *United States v. Moya–Gomez,* 860 F.2d 706, 756 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989) (quoting *United States v. Pope,* 739 F.2d 289, 291 (7th Cir.1984)). Under 18 U.S.C.

§ 922(g)(1), the required state of mind is that the "defendant *knowingly* possessed the gun...." *United States v. McNeal,* 900 F.2d 119, 121 (7th Cir.1990) (emphasis added). Moore was clearly aware of Miles' use of a gun in both armed robberies and, thus, satisfied this prong of the "aiding and abetting" test. Therefore, the evidence was sufficient for a reasonable jury to find that Moore was guilty of the firearms offense both as a principal and/or under an aiding and abetting theory.

The jury's verdict against Moore was based upon sufficient evidence and the trial court judge did not commit reversible error. Moore's convictions are

AFFIRMED.