**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald WYNN, Defendant–Appellant.**

**No. 85–2387.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1988.

Decided May 2, 1988.

Alan M. Freedman, Chicago, Ill., for defendant-appellant.

Barbara F. Lazarus, Asst. U.S. Atty., Anton R. Valukas, Chicago, Ill., for plaintiff-appellee.

Before CUDAHY, POSNER, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Ronald Wynn appeals from his conviction on one count of embezzling a letter in the course of his job as a postal service employee, in violation of 18 U.S.C. § 1709,[1] and one count of knowingly and without authority opening mail not directed to him, in violation of 18 U.S.C. § 1703(b).[2] The letter that Wynn improperly opened contained $100 in food stamps. The sole issue on appeal is whether the district court erred under Federal Rule of Evidence 404(b) in admitting certain evidence relating to pre-

vious reports of missing food stamps and a prior investigation of Wynn. The defendant, however, failed to raise this objection at trial, and because we conclude that the admission of this evidence did not constitute plain error, we affirm.

## I.

### A.

Wynn worked as a mailman for the United States Postal Service at the Auburn Park Postal Station in Chicago, Illinois. On February 7, 1985, United States Postal Inspectors Hanson and Sack gave Wynn's supervisor, Malcolm Jeffries, a test letter containing two $50 booklets of food stamps in a standard food stamp mailing envelope. The envelope also contained a transmitter that was programed to emit a slow, steady beep while the letter was sealed, and a faster beep ("alarm mode") once the letter was opened. The test letter was addressed to an address outside of Wynn's delivery route. Jeffries put the test letter in a bundle of twenty-five other letters all of which contained addresses outside of Wynn's postal route; he then placed the bundle in Wynn's mail carrier bag.

If Wynn had followed proper post office procedure, he would have returned the test letter and the twenty-five other "missorts" to a postal clerk for resorting. Although Wynn returned the twenty-five missorted letters for resorting, he took the test letter with him on his delivery route. When Wynn left the postal station he was followed by postal inspectors who monitored the transmitter in the test letter. Shortly after Wynn left the station the beeper went into the alarm mode, signaling that the letter had been opened. The inspectors pursued Wynn, but he refused to stop his mail jeep. Eventually the inspectors stopped Wynn, and they found the opened

---

1. 18 U.S.C. § 1709 provides in relevant part:
   Whoever, being a Postal Service officer or employee, embezzles any letter, ... package, ... or mail, or any article or thing contained therein entrusted to him or which comes into his possession intended to be conveyed by mail, or carried or delivered by any carrier,

   ... shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 1703(b) provides in relevant part:
   Whoever, without authority, opens ... any mail ... not directed to him, shall be fined not more than $100 or imprisoned not more than one year, or both.

test letter lying in the snow a few blocks away.

### B.

In his opening statement to the jury, Wynn's counsel set forth the defense's theory of the case. He suggested that Jeffries, Wynn's supervisor, had a vindictive score to settle with Wynn and that he "framed" Wynn in order to get him fired. Wynn's counsel specifically mentioned that postal inspectors had conducted an unsuccessful investigation of Wynn less than two weeks before the February 7, 1985 investigation. He also indicated that both of these test letter investigations occurred on days when Jeffries' supervisor was absent and when Jeffries was therefore in charge of the operation of the Auburn Park Station.

In its case-in-chief, the government called Postal Inspector Hanson; he testified in part about the prior unsuccessful investigation of Wynn that he conducted on January 24, 1985. On direct examination, Hanson testified that less than one month before the successful investigation, another "missorted" test letter containing food stamps was placed in Wynn's regular mail. This first test letter, however, did not contain a transmitter. Although the postal inspectors who conducted the first investigation followed Wynn on his delivery route, they were unable to determine what happened to the test letter.

Twice during the government's direct examination of Hanson, Wynn's counsel objected to the admission of this evidence. The defendant first objected that Hanson's testimony about what another postal inspector saw during the surveillance was inadmissible hearsay. The district court overruled this objection because the evidence was not offered to prove the truth of

the matter asserted. Wynn does not raise this issue on appeal. Wynn's second objection was that the government had not laid a proper foundation for Hanson's testimony. Once a satisfactory foundation was laid, however, Wynn's lawyer did not raise any other objections to the admission of Hanson's testimony about the earlier investigation.[3]

On cross-examination Wynn's attorney questioned Hanson extensively about the prior unsuccessful investigation. Wynn's counsel also asked Hanson about his motives for investigating Wynn, and his analysis of prior allegations of missing food stamp letters in the jurisdiction of the Auburn Park Postal Station.[4] In response to counsel's questions, Hanson testified that he did not have a specific suspect when he began his general investigation of food stamp letters reported lost from the Auburn Park Station. Upon analyzing these reports, however, Hanson discovered that Wynn's name reappeared several times.

On redirect examination, counsel for the government asked Hanson more specifically about his analysis of the missing food stamp reports. Hanson testified that his analysis revealed that on several occasions food stamps that should have been delivered on Wynn's route were reported missing, and on that basis Wynn became the primary suspect of his investigation.

Wynn's counsel objected that there was not an adequate foundation for this testimony and he moved to strike the answer. The court allowed the government to continue the line of questioning subject to a later ruling on foundation. Following further cross-examination of Hanson by Wynn's lawyer, the defendant renewed his motion to strike the disputed portions of Hanson's testimony for lack of foundation. The district court denied the motion. On

---

**3.** Immediately following Wynn's foundation objection there was a sidebar discussion that is not transcribed in the record. At the end of the day, however, the parties were given an opportunity to make objections on the record outside the hearing of the jury. On the day of Hanson's testimony, Judge Getzendanner specifically asked the parties if they wished to memorialize any of the objections they had made at the

sidebar conference. Wynn's counsel did not make any objections on the record at that time.

**4.** The government objected to this line of questioning as irrelevant. A sidebar discussion was held off the record, after which the judge overruled the government's objection and permitted Wynn's attorney to continue questioning Hanson on this issue.

appeal Wynn does not challenge the district court's rulings on his foundation objections.

During closing arguments, Wynn's counsel alluded both to the reports of missing food stamps and to the prior unsuccessful test letter investigation. He argued at length that the prior investigation was persuasive evidence that Wynn was singled out for scrutiny by his supervisor, and that Wynn was just the innocent victim of Jeffries' frameup. On appeal Wynn argues for the first time that the admission of Hanson's testimony about the reports of missing food stamps and the prior unsuccessful investigation should have been excluded under Federal Rule of Evidence 404(b).[5]

## II.

■ To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection. *United States v. Laughlin,* 772 F.2d 1382, 1391–92 (7th Cir.1985). An objection is proper only if "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context...." Fed.R.Evid. 103(a)(1).[6] Neither a general objection to the evidence nor a specific objection on other grounds will preserve the issue for review. *Laughlin,* 772 F.2d at 1392 (defendant's objection at trial that certain photographs were not relevant or alternatively were more prejudicial than probative did not preserve for appeal the claim that the evidence should have been excluded under Federal Rule of Evidence 404(b)). "The specific ground for

reversal of an evidentiary ruling on appeal must also be the same as that raised at trial." *United States v. Taylor,* 800 F.2d 1012, 1017 (10th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987). *See also United States v. Medina,* 755 F.2d 1269, 1275–76 (7th Cir.1985) (because defendant did not object at trial to the admission of evidence under Rule 404(b), the issue was waived on appeal); *United States v. Hickerson,* 732 F.2d 611, 613 (7th Cir.), *cert. denied,* 469 U.S. 846, 105 S.Ct. 159, 83 L.Ed.2d 95 (1984) (general objection to all unrelated evidence did not preserve issue of admissibility of certain photographs on relevancy grounds).

At trial Wynn objected that Hanson's testimony about the reports of missing food stamps and the prior investigation was impermissible hearsay and lacked a sufficient foundation. The district court overruled both of these objections and Wynn does not contest those rulings on appeal. Instead, on appeal Wynn raises an entirely new objection to the admission of this evidence—Rule 404(b). Because Wynn did not object under Rule 404(b), the district court never considered whether this evidence was inadmissible on these grounds. As a result, Wynn has waived this issue on appeal unless the admission of Hanson's testimony was plain error. *Laughlin,* 772 F.2d at 1392; Fed.R.Crim.P. 51 and 52.

## III.

A plain error is one that results in "an actual miscarriage of justice."[7] *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied,* 469 U.S. 1111,

---

5. Federal Rule of Evidence 404(b) provides:
   (b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

6. The defendant does not argue that it is apparent from the context of Hanson's testimony that he was objecting under Rule 404(b); this argument is therefore waived.

7. The plain error doctrine presupposes the existence of an error. We do not address the question of whether or not it was error under Rule 404(b) to admit Hanson's testimony because we conclude that in any event the admission of this evidence did not create plain error. We therefore express no opinion as to whether Hanson's testimony constituted prior "bad acts" evidence or fell within one of the accepted uses for such evidence under Rule 404(b).

105 S.Ct. 792, 83 L.Ed.2d 785 (1985). The plain error doctrine allows an appellate court to correct errors that were not objected to at trial if the defendant can demonstrate that he or she probably would have been acquitted but for the erroneously admitted evidence. *United States v. Whaley*, 830 F.2d 1469, 1476 (7th Cir.1987).[8] *See United States v. Sblendorio*, 830 F.2d 1382, 1388 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988) (plain error is prejudicial in that it undermines confidence in the outcome of the trial); *United States v. Jackson*, 542 F.2d 403, 409 (7th Cir.1976) (plain error doctrine reserved for exceptional circumstances). Thus, the district court's admission of Hanson's testimony is plain error only if we can find that it caused a miscarriage of justice.

### A.

■ In this case it appears that Wynn's failure to object under Rule 404(b) to the admission of Hanson's testimony about the earlier unsuccessful investigation was a strategic decision. Where a defendant fails to object to the admission of evidence at trial because of a tactical decision, we are even more reluctant to find plain error. *United States v. Gironda*, 758 F.2d 1201, 1219 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985) (*citing United States v. Allain*, 671 F.2d 248 (7th Cir.1982)). Wynn's counsel relied on the first unsuccessful investigation as evidence supporting his theory that Wynn was not guilty of stealing food stamps, but instead was framed by his vindictive supervisor. During the discovery conference that was held prior to trial, Wynn's lawyer indicated that he intended to use this evidence to impeach Jeffries. Furthermore, Wynn's counsel referred to the prior investigation in both his opening statement and closing argument to the jury.

Wynn's decision not to object under Rule 404(b) to the admission of Hanson's testimony relating to the unsuccessful investigation was part of a deliberate trial strategy. This evidence was the basis of Wynn's theory that he was simply the innocent victim of a frame-up. Under these circumstances, we cannot conclude that had this evidence been excluded Wynn probably would have been acquitted. We therefore cannot find that the district court's decision to admit this evidence was plain error.

### B.

■ Wynn also argues that the district court erred under Rule 404(b) when it admitted Hanson's testimony about reports of missing food stamps on Wynn's delivery route. Wynn, however, failed to make a Rule 404(b) objection at trial and we will therefore not reverse his conviction absent plain error. *United States v. Laughlin*, 772 F.2d 1382, 1391–92 (7th Cir.1985).

It is clear from the record that Wynn opened the door to this line of questioning when he tried to impeach Hanson on the issue of his motive for investigating Wynn. By questioning Hanson's motives, Wynn's counsel was attempting to further his theory that Wynn was framed. Wynn's own counsel actually elicited the portion of Hanson's testimony about the prior reports that was most damaging to Wynn. On redirect examination the government merely clarified the basis for Hanson's suspicion of Wynn.

Wynn's lawyer was directly responsible for the introduction of the evidence of missing food stamps. "When a party opens up a subject, even though it may not be strictly relevant to the case, he cannot complain on appeal if the opposing party introduces evidence on the same subject." *United States v. Peco*, 784 F.2d 798, 805 (7th Cir.),

---

**8.** To be plain, an error must be conspicuous, at least in hindsight ...; but it must also be an error that probably changed the outcome of the trial, and the fact that [an] error cannot be dismissed as harmless ... is not enough to show that it probably changed the outcome. No doubt the difference between the standards of plain and harmless error is small,

but there is some, and there is a reason for it. Reversing a conviction on the basis of an error that the defendant's lawyer failed to bring to the judge's attention is inconsistent with the premises of an adversary system and disruptive of the efficient operation of the criminal justice system.

*Silverstein*, 732 F.2d at 1349 (citations omitted).

*cert. denied,* 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986) (*quoting United States v. Carter,* 720 F.2d 941, 948 (7th Cir.1983)). *See Allain,* 671 F.2d at 252–53. Because Wynn did not make a Rule 404(b) objection, and actually elicited the testimony he now complains was improperly admitted, we are very reluctant to find plain error. In the context of this case, the admission of testimony about reported food stamp shortages did not cause a miscarriage of justice. We therefore cannot find that the admission of this evidence was plain error.

### IV.

We hold that the district court's admission of testimony about a prior unsuccessful investigation and reports of missing food stamps did not rise to the level of plain error. The judgment of conviction is therefore

AFFIRMED.