2 F.3d 1153
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Riley BARNETT, III, Willie Coleman and Cynthia Alexander,
Defendants-Appellants.
 Nos. 91-3758, 91-3759 and 92-2210.
 United States Court of Appeals, Seventh Circuit.
 Argued June 11, 1993.
Decided Aug. 18, 1993.
 
 Before EASTERBROOK and MANION, Circuit Judges, and ALDISERT, Senior Circuit Judge.*
 
 ORDER
 
 1
 The appeals of Riley Barnett at No. 91-3758, Willie Coleman at No. 91-3759 and Cynthia Alexander at No. 92-2210, consolidated for briefing and argument purposes, are from jury convictions and sentences stemming from their participation in a cocaine distribution organization headed by Clifford Jones in the Waukegan/North Chicago area. Collectively appellants present 11 issues for consideration. We conclude that these contentions are without merit and affirm the judgments of the district court.
 
 
 2
 The jury convicted Barnett of conspiracy to defraud the United States by impeding the functions of the Internal Revenue Service, 18 U.S.C. Sec. 371, money laundering, 18 U.S.C. Sec. 1956(a)(1)(B)(i), and making false statements to the government, 18 U.S.C. Sec. 1001. Coleman was found guilty of conspiracy to distribute cocaine, 21 U.S.C. Sec. 846, and two counts of distribution, 21 U.S.C. Sec. 841(a)(1). Alexander was convicted of aiding and abetting a conspiracy to distribute cocaine and possessing cocaine with intent to distribute, 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 846, conspiring to defraud the United States by impeding the functions of the IRS, 18 U.S.C. Sec. 371, eleven counts of money laundering, 18 U.S.C. Sec. 1956(a)(1)(B)(i), structuring transactions to evade reporting requirements of the IRS, 31 U.S.C. Secs. 5324(3) and 5322(a), and obstructing justice, 18 U.S.C. Sec. 1503. Each defendant filed timely notices of appeal pursuant to Rule 4(b), Federal Rules of Appellate Procedure, and this court has jurisdiction of these appeals from final judgments. 28 U.S.C. Secs. 1291 and 18 U.S.C. Sec. 3742.
 
 
 3
 The prosecutions arose from a 33-count indictment against the Clifford Jones drug ring. The indictment named 20 persons, of whom 15 pleaded guilty with five of them testifying in favor of the government at trial. The remaining five, including the three appellants before us, were convicted after a three-week trial.
 
 I.
 
 4
 Examining the evidence in the light most favorable to the government, Clifford Jones operated a large drug distribution conspiracy in the Waukegan/North Chicago area. He used his own house as a stash house and also sold drugs out of other locations. Members of his family were involved in his operation. In November 1987, he was arrested for possession of 10 grams of cocaine and retained appellant Cynthia Alexander as his attorney. She advised him not to get caught with more than five grams of cocaine in his possession, because possession of more than five grams carried a mandatory prison term under Illinois law.
 
 
 5
 He was arrested again in March 1988, charged with possession of two grams of cocaine for which he was convicted in state court and received two years probation. He testified that after his arrest Alexander advised him not to use white notebook paper to package cocaine because it was traceable but to use magazine paper instead.
 
 
 6
 He was arrested a third time in November 1989, on this occasion at O'Hare Airport, and charged with possession of a handgun. At the time of his arrest he had in his possession $75,000.00 cash and was driving a limousine rented in Alexander's name. He pleaded guilty and received four months in jail. Prior to entering his plea, he decided to cooperate with the government. As part of an agreement, the government committed itself to recommending a ten-year term of imprisonment for his role as one of the 20 persons charged in the 33-count cocaine indictment. He was released from custody, and the government used him to implicate others, furnishing him with an apartment, food and expense money. He wore a body recorder and recorded several conversations with appellants Alexander and Barnett.
 
 
 7
 Jones testified at length about what he did with proceeds from the drug business. In 1986, he purchased a new Corvette automobile for $36,000.00, paying $10,000.00 down and assuming monthly payments but placing title in the name of a Nannette Golden. After he had a falling out with Golden, Jones asked Alexander to intercede, and she eventually persuaded Golden to maintain the arrangement. Jones made monthly payments through Alexander's business account.
 
 
 8
 In 1988, he purchased a Blazer truck for $15,600.00, and Alexander suggested that he put the truck in the name of his brother, Carl, and that cash payments for it should be kept under $10,000.00 to avoid IRS scrutiny. After Carl Jones received a grand jury subpoena, both Clifford and Carl Jones testified that Alexander told Carl he should say that the Blazer was purchased with money saved during his 15 years in the military.
 
 
 9
 Jones later purchased an International truck for his landscaping business. Alexander helped him put the truck in the name of Carl Jones and the Jones' grandmother, Dorothy Tenner. They paid $35,000.00 for the truck, using money that was wired into Alexander's business account by Clifford Jones' sister, Cheryl.
 
 
 10
 Alexander then told Jones that she bought a Cadillac Seville and instructed Jones to complete the transaction for her by giving the dealer $8,000.00 cash of his own money and a $20,000.00 cashier's check drawn on her credit union. Two weeks after this purchase, she was to purchase a second Cadillac for Jones, who gave her $5,000.00, but instead of purchasing the car, she leased another in her name.
 
 
 11
 Alexander also advised Jones how to buy a home in California in the name of his fiance's parents, James and Laverne Young. Jones took $50,000.00 in cash to Alexander, who arranged to send the money to California to cover the full down payment of $52,100.00, the money being sent in increments of less than $10,000.00 to avoid IRS attention. After the Youngs received grand jury subpoenas, they met with Jones and Alexander. Alexander advised them to say they bought the house for Jones and their daughter.
 
 
 12
 Using Barnett and Alexander, Jones bought a house at 925 Lincoln Avenue in Waukegan. Jones gave Alexander $5,000.00 as a down payment and assumed the mortgage payments. The agreement for the deed listed Barnett as the purchaser for a price of $59,000.00. The $5,000.00 payment during the closing came from the account of Alexander.
 
 
 13
 After one of Jones' drug houses was raided, he delivered $70,000.00 in cash to Alexander and instructed her to set up a trust for his son. He never saw the trust documents or the money again. Carl Jones testified to carrying various amounts of cash to Alexander's office on behalf of his brother Clifford. Clifford Jones estimated that he gave her more than $150,000.00 in cash separate and apart from the vehicle and real estate purchases.
 
 
 14
 Delbert Yarborough, a worker for Clifford Jones, testified he accompanied Jones seven or eight times to Alexander's office to drop off substantial quantities of cash and that he was present at her law office when Alexander told Jones that if Jones were caught with less than 5 grams of cocaine, she could "beat" the case and that by this he understood she would keep him on probation and out of jail.
 
 
 15
 IRS Agent John White said he had three conversations with Barnett, who said that Jones was to buy the Lincoln Avenue property from Barnett, but the deal had fallen through. Barnett also said that he scraped together the money himself for that property and denied getting any money from Jones or Alexander. He said that the down payment was his but later stated that he had received $2,000.00 from Alexander and then changed this to $3,000.00.
 
 
 16
 As early as 1987, Clifford Jones had learned that he was being investigated, and thereafter he consulted almost daily with Alexander. He testified that Alexander advised him to keep his drug houses open and to give his workers what they wanted--money or cocaine or both--in order to learn what they were telling investigators.
 
 II.
 
 17
 Riley Barnett was convicted of conspiracy to impede the Internal Revenue Service (Count 9), money laundering (Count 28) and making false statements to conceal money obtained from an illegal activity (Count 32). He argues that the court abused its discretion in admitting certain evidence and that "introduction of certain statements concerning the appellant so prejudiced him as to constitute a denial of due process." Barnett Br. at 5.
 
 
 18
 The government alleged that Jones purchased the house at 925 Lincoln Avenue with drug money, although the deed listed Barnett as the owner. Barnett's defense was that he actually owned the house. The government contended that if Barnett in fact had owned the house, he would have taken advantage of tax benefits connected with it. The government indicated its intent to introduce evidence that Barnett did not file tax returns in 1988 and 1989. Barnett made a motion in limine to exclude evidence that he did not file tax returns for 1986-1989.
 
 
 19
 The court ruled that only if Barnett presented evidence that he owned the property would the government be permitted to introduce the disputed tax return information. We hold that the court did not abuse its discretion in ruling that such evidence would have been probative to show that Barnett was not the true owner of the Lincoln Avenue property and that it was actually purchased by Jones with illicit narcotics proceeds.
 
 
 20
 Barnett next contends that he was unfairly prejudiced by the admission of three tape-recorded conversations. In two of these conversations between Jones and Alexander, Barnett was referred to as "a drunk." In the third conversation, Barnett said that while in jail on a drunken driving charge he heard someone say that "Clifford" was suspected of passing drugs into the jail. The government said that this portion of the tape was relevant to show that Barnett knew that Clifford Jones was a drug dealer. We conclude that the court did not abuse its discretion in admitting these portions of the three taped conversations.
 
 III.
 
 21
 Willie Coleman, convicted of three of the four counts and sentenced to 51 months, argues that there was prosecutorial misconduct in the government's closing speech, that the district court should not have given a modified Allen charge when the jury reported that it was at an impasse on one count and that the sentencing court erred in adopting a base offense level of 24.
 
 
 22
 Testimony disclosed that members of the Jones organization used a house on Seymour Street rented by Coleman. Beck, a female undercover officer, testified that Coleman got her some cocaine and that he possessed a firearm. Coleman said that he had bought the cocaine for Beck because she was introduced by his neighbor, police officer McKissick, who asked him to obtain the cocaine.
 
 
 23
 In closing argument, counsel for Coleman pointed out that McKissick had not been called as a witness. Coleman now objects to the following argument of the prosecutor in closing:
 
 
 24
 As far as "Where is McKissick," well, I'll tell you where McKissick is. He's at tab 2 and tab 3. Do you want to hear McKissick? Play the tapes. If the defense wanted to have McKissick testify, they could have called him. If Mr. McKissick had anything to say in support of Willie Coleman's story, Willie Coleman could have seen that Richard McKissick appeared in court.
 
 
 25
 Tr. 3020.
 
 
 26
 We find no prosecutorial misconduct in this reference to McKissick. We conclude that these statements respond to the reference to the officer made by Coleman's counsel in his own closing speech.
 
 
 27
 The jury began its deliberations on Friday, August 2, 1991 and on the following Monday sent a note to the trial judge:
 
 
 28
 We the jury, have reached a verdict on all counts, but one. We are at an impasse on that one count. And further deliberation would have no value.
 
 
 29
 O.R.Bar. 369. In response, the court repeated to the jury a part of the original instruction approved by us in United States v. Silvern, 484 F.2d 879, 883 (7th Cir.1973), and United States v. Sblendorio, 830 F.2d 1382, 1386-87 (7th Cir.1987), cert. denied, 484 U.S. 1068 (1988). We find no abuse of discretion.
 
 
 30
 We are satisfied also that the district court did not err in determining a base level of 24 for Coleman's sentence. There was sufficient evidence to show that the Clifford Jones drug organization sold at least 400 to 500 grams of cocaine during Coleman's involvement and that Coleman could have reasonably foreseen this.
 
 IV.
 
 31
 Alexander presents six reasons why she should be granted a new trial. We conclude that none are persuasive.
 
 A.
 
 32
 She asserts that the government failed to timely produce evidence that was favorable to the defense. She relies chiefly on Local Rule 2-04 of the United States District Court for the Northern District of Illinois, Giglio v. United States, 405 U.S. 150 (1972), and Brady v. Maryland, 373 U.S. 83 (1963). Initially, we will not notice her Rule 2-04 contention, because it was not presented to the district court.
 
 
 33
 Alexander's attorney asked the government to turn over the FBI's form 302 reports of interviews with Carl Jones and Grace Martinez, Alexander's secretary. We are not impressed by her argument. We are satisfied that she had available the information that is the subject of her contention and that she has failed to show that she suffered any prejudice as a result of the alleged discovery violations.
 
 B.
 
 34
 She next argues that the evidence was insufficient to sustain a conviction for aiding and abetting the drug conspiracy. We are satisfied that the record, including inter alia those portions summarized in Part I of this Order, supports the conviction.
 
 C.
 
 35
 Alexander next argues that the district court incorrectly instructed the jury on aiding and abetting a conspiracy:
 
 
 36
 Although not charged in the indictment with conspiracy to distribute cocaine, the defendant Cynthia Alexander is charged in Count 2 as an aider and abettor of that conspiracy. Generally, any person who knowingly aids, abets, counsels, commands, induces or procures the commission of a crime is guilty of that crime. One can aid and abet a conspiracy without necessarily participating in the original agreement. However, that person must knowingly associate his-self [sic] with the criminal venture and participate in it and try to make it succeed.
 
 
 37
 Tr. 3065; O.R.Bar. 328. The instruction given here differs from the Seventh Circuit Committee Instruction 5.08 by its inclusion of the middle sentence: "One can aid and abet a conspiracy without necessarily participating in the original agreement." Alexander complains that the inclusion of this statement "gives the instruction an impermissible tilt in favor of the government." Alexander Br. at 34. She submits that there is no authority for the language contained in the objectionable sentence. Id. at 35. Yet, at the same time, she concedes that the sentence is a correct statement of the law. Id. at 34.
 
 
 38
 We are satisfied that the district court's instruction accurately and fairly informed the jury on the law of aiding and abetting a conspiracy.
 
 D.
 
 39
 Her next argument is that the evidence was insufficient to sustain her conviction for money laundering. We are satisfied that the record, including inter alia those portions previously summarized in Part I, supports the conviction.
 
 E.
 
 40
 We will not notice appellant's argument asserting a denial of effective assistance of counsel, being of the view that this issue should be presented to the district court in the first instance in a proceeding under 28 U.S.C. Sec. 2255. United States v. Lang, 644 F.2d 1232, 1240 (7th Cir.) (refusing to decide competence of counsel claim on direct appeal, when record was insufficiently developed to rule on claim), cert. denied, 454 U.S. 870 (1981).
 
 F.
 
 41
 Finally, Alexander raises two objections to the district court's calculation of her sentence under the sentencing guidelines: that the court did not properly determine the amount of cocaine foreseeable to her and improperly increased her offense level under Section 3B1.3 of the sentencing guidelines, use of a special skill.
 
 1.
 
 42
 Alexander's sentence of 87 months imprisonment was based on the following calculations. The court found that laundered money from drug proceeds amounted to $114,000.00 and that $150,000.00 given her by Clifford Jones and deposited by her in a safety deposit box also represented drug proceeds. He added these two amounts to arrive at $264,000.00 of drug money. He then determined that this represented 2.64 kilograms of cocaine, based on a retail price of $100.00 per gram. The guidelines prescribe an offense level of 28 when the amount of cocaine involved is at least 2 kilograms but less than 3.5 kilograms. We conclude that the court committed no error.
 
 2.
 Sentencing Guideline Sec. 3B1.3 provides:
 
 43
 If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by two levels.
 
 
 44
 Application note 2 defines "special skill" as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing" and sets forth "lawyers" as an example.
 
 
 45
 Alexander concedes as much but argues that the record does not support a finding that she used her special skills as a lawyer in facilitating the commission of a crime. Because this issue is being raised for the first time on appeal, our review is limited to plain error. United States v. Wynn, 845 F.2d 1439, 1442 (7th Cir.1988).
 
 
 46
 Our independent examination of relevant parts of the record persuades us that the court did not err in determining that her skills as a lawyer significantly facilitated the commission or concealment of the charged offenses. For example, she drew on her experience as a criminal defense lawyer to advise Clifford Jones not to get caught with more than five grams of cocaine and to suggest that he use magazine paper to wrap his cocaine. Her familiarity with the grand jury process also prompted her to talk to Jones' workers and to tell them what to say. Moreover, as a lawyer she gained access to Jones at his detention hearing, and she arranged to submit a fake court order and to obtain testimony of a supposed "minister" on Jones' behalf, understanding that these tactics would help get Jones released from detention.
 
 
 47
 The court did not commit plain error in applying the sentencing enhancement of Section 3B1.3.
 
 V.
 
 48
 We have given careful consideration to all contentions presented by appellants Barnett, Coleman and Alexander. To the extent that we have not discussed all the nuances of their many arguments, it should be understood that they have been considered and rejected.
 
 
 49
 The judgments of the district court are AFFIRMED.
 
 
 
 *
 Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit is sitting by designation