36 F.3d 1099
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Albert JACKSON, Defendant-Appellant.
 No. 91-3063.
 United States Court of Appeals, Seventh Circuit.
 Argued May 18, 1994.
Decided Aug. 11, 1994.
 
 Before WOOD, Jr., MANION and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Albert Jackson ("Jackson") was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. Secs. 846 and 841(a)(1) (count I) and distribution of cocaine and aiding and abetting in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2 (count II). Jackson was sentenced to 240 months imprisonment on count I and 22 months imprisonment on count II to be served consecutively. Upon release, Jackson is to serve two five-year terms of supervised release to be served consecutively.
 
 
 2
 On appeal, Jackson brings before us several challenges to his sentence. He also argues that the evidence presented to the jury was insufficient to sustain his convictions. We affirm in all respects.
 
 I. Background
 
 3
 In January of 1988, the Illinois State Police began investigating three persons, Jackson, Edgar Williams, and James Brownlee for narcotics violations. During the evening hours of January 28, 1988, Richard Woods, an agent with the Division of Criminal Investigations, initiated a controlled buy. Accompanied by Henry Gaston, a confidential source, Woods drove to a residence on North 15th Place in Springfield, Illinois. They were greeted by Brownlee. After Woods indicated that he would like to purchase cocaine, Brownlee informed him that cocaine could be bought from "A.J." (Jackson). Brownlee then apparently agreed to accompany Woods in search of Jackson.
 
 
 4
 After dropping Gaston off at his home, Woods and Brownlee proceeded to search for Jackson, eventually ending up at 1840 South 17th Street in Springfield. Agent Woods waited in the car while Brownlee entered the house. Woods also briefly entered the house, but Jackson, uncomfortable with the presence of the stranger, asked Woods to leave. Jackson then directed Brownlee to meet him at the American Legion parking lot later that evening. Jackson also called Williams and asked him to be there as well.
 
 
 5
 Once everyone had assembled in the American Legion parking lot, Jackson directed Williams to pass Brownlee a package of cocaine and agreed to pay Williams for that service. Williams then walked towards Woods and Brownlee. Williams made it clear that he would deal only with Brownlee since he did not know Woods. Brownlee agreed and walked with Williams over to a brown Pontiac where Williams handed Brownlee a clear plastic bag containing 11.6 grams of cocaine. Brownlee in turn gave the cocaine to Woods who paid Brownlee $1,100.00. Brownlee promptly gave the money to Williams who gave it to Jackson.
 
 
 6
 As a result of this transaction, Jackson was arrested and tried before a jury on two counts of conspiracy to distribute, distribution of cocaine, and aiding and abetting. On May 15, 1991, Jackson was found guilty on both counts and sentenced to an aggregate sentence of 262 months imprisonment followed by two consecutive five-year terms of supervised release. Jackson appeals his sentence and the sufficiency of the evidence to sustain his conviction.
 
 II. Discussion
 
 7
 Jackson first challenges the validity of his sentence under United States Sentencing Guidelines ("U.S.S.G.") Sec. 1B1.3. He brings before us several challenges to the relevant conduct calculations upon which his sentence was based, claiming first that the district court violated the ex post facto clause of the Constitution by applying the Guidelines in effect at the time of his sentencing rather than those in effect at the time he committed the offense for which he was convicted which, he alleges, are different. We disagree.
 
 
 8
 We first note that this argument was not presented to the district court. To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection. United States v. Wynn, 845 F.2d 1439, 1442 (7th Cir.1988). Without a specific objection, this issue is waived for appeal. Id. We therefore review this issue only for plain error. Id.; United States v. White, 903 F.2d 457, 466 (7th Cir.1990).
 
 
 9
 To be plain, "an error must be conspicuous, at least in hindsight." White, 903 F.2d at 466 (quoting United States v. Silverstein, 732 F.2d 1338, 1349 (7th Cir.1984), cert. denied, 469 U.S. 111 (1985)).
 
 
 10
 A plain error is an error that is not only palpably wrong but is also likely to cause the outcome of the trial to be mistaken. A reversal on the basis of plain error can be justified only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice.
 
 
 11
 Id. at 466-67 (citations and quotations omitted).
 
 
 12
 Jackson is correct in stating that the ex post facto clause of the Constitution prohibits application of a Guidelines provision not in effect on the date of the offense if the new provision operates to the detriment of the defendant. United States v. Seacott, 15 F.3d 1380, 1384, 1386 (7th Cir.1994). When the Sentencing Commission amends the Guidelines to increase the severity of a punishment, the ex post facto clause prohibits application of the amended Guidelines to crimes committed before the amendments' effective date. Id. at 1384 (also holding that the retroactive application of amended Guidelines in that case violated the ex post facto clause and resulted in plain error where a stiffer sentence resulted from the application of the later guideline, id. at 1386). In this case, Jackson was convicted for an offense committed on January 28, 1988. He was sentenced on August 19, 1991. The versions of the Guidelines in effect on both dates, however, are identical and read in pertinent part as follows:
 
 
 13
 Relevant Conduct (Factors that Determine the Guideline Range)
 
 
 14
 (a)(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;
 
 
 15
 (a)(2) solely with respect to offenses of a character for which Sec. 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;
 
 
 16
 U.S.S.G. Sec. 1B1.3 (effective January 15, 1988). There is therefore no change in the language of the Guidelines that would trigger a violation of the ex post facto clause.
 
 
 17
 Jackson, however, argues that an intervening policy change has so affected the application of the language of this section that it effectively increases punishment in violation of the ex post facto clause. Again, we disagree.
 
 
 18
 Amendment 345, for example, to which Jackson refers as evidence of this policy change, added the following language to the Introductory Commentary of Chapter Three, Part B, of the Guidelines:
 
 
 19
 The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of Sec. 1B1.3 (Relevant Conduct), i.e., all conduct included under Sec. 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction....
 
 
 20
 This amendment clarifies the conduct that is relevant to the determination of Chapter Three, Part B, and clarifies the operation of Sec. 3B1.2 in certain cases. The effective date of this amendment is November 1, 1990.
 
 
 21
 Jackson argues that this language demonstrates a policy shift from a charge offense system, where only conduct included in the offense of conviction is considered, to a real offense system, where the court may consider all relevant conduct that is part of the same course of conduct or common scheme as the count of conviction.
 
 
 22
 While we agree that the effect of adding language similar to that quoted above effectively forecloses, after November 1, 1990, interpretations meant to restrict the applicable Guidelines provisions to facts of the offense of conviction, see United States v. Perdomo, 927 F.2d 111, 116 (2d Cir.1991), we also note that nothing in this amendment indicates that courts were restricted solely to a charge offense system on January 28, 1988, the date Jackson sold the 11.6 grams of cocaine. For example, commentary to Sec. 1B1.3, effective January 15, 1988, states that
 
 
 23
 [c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range. ... [For example,] in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction. ...
 
 
 24
 The purpose of this amendment is to clarify the guideline. The amended language restates the intent of Sec. 1B1.3 as originally promulgated. The effective date of this amendment is January 15, 1988.
 
 
 25
 Even this court in United States v. Tetzlaff, 896 F.2d 1071 (7th Cir.1990), which, prior to amendment 345, restricted Sec. 3B1.1(c) to facts of the offense of conviction, stated that "[i]n general, the Guidelines permit a sentencing court to consider reliable information beyond that relating to the offense of conviction. For example, Guidelines Sec. 1B1.3 requires the sentencing court to take account of 'relevant conduct' where appropriate in the Guidelines scheme." Id. at 1073. Add to this the explicit admonitions in the amendments themselves that they were meant simply to clarify and not substantively change the interpretation of the Guidelines[1], and we conclude that Jackson's ex post facto argument based on an alleged policy change must fail.[2] The district court did not commit error, let alone plain error, in applying the Guidelines in effect at the time of Jackson's sentencing.
 
 
 26
 As a final matter, Jackson also alleges that the district court violated the ex post facto clause when he considered, as part of the relevant conduct under U.S.S.G. Sec. 1B1.3, conduct that was committed prior to the effective date of the Guidelines. Specifically, Jackson challenges the inclusion of drug transactions which occurred prior to November of 1987. Numerous other circuits, however, have explicitly held that enhancement of a sentence under Sec. 1B1.3 for a post-Guidelines offense based on relevant conduct associated with crimes that were committed prior to the effective date of the Guidelines does not violate the ex post facto clause. See United States v. Kienenberger, 13 F.2d 1354, 1357 (9th Cir.1994) (and cases cited therein). We agree and, again, find no error.
 
 
 27
 Jackson continues his challenge to the relevant conduct calculations by asserting that the testimony relied upon by the district court in calculating the amount of drugs under count I was unreliable. Jackson specifically complains of the lack of physical corroboration in the testimony of three co-defendants: Compton, Moore, and Young. Jackson also alleges that these witnesses may have been motivated by a desire to see their own offenses lessened as a result of fingering Jackson. Of course, the government's evidence regarding the quantity of drugs must have sufficient indicia of reliability to support probable accuracy. United States v. Atkinson, 15 F.2d 715, 720 (7th Cir.1994). It is, however, left to the sound discretion of the district court to assess such evidence. Id. In addition, we note that "[t]he testimony of one witness, even one arguably biased against the defendant, is sufficient to support a finding of fact." United States v. Cedano-Rojas, 999 F.2d 1175, 1180 (7th Cir.1993). Special deference must be accorded the district court's credibility determinations, as the trial judge is in the best position to observe witness demeanor. United States v. Hamm, 13 F.2d 1126, 1129 (7th Cir.1994). The district court's credibility determinations will not be overturned except for clear error, id. at 1130, nor will its factual findings with respect to relevant conduct. United States v. Vopravil, 891 F.2d 155, 157 (7th Cir.1989).
 
 
 28
 In this case, the district judge specifically found that the three witnesses who testified to drug amounts under count I were credible. Jackson has not demonstrated how this assessment was clearly erroneous. His arguments concerning bias and lack of corroboration (including asserted impeachment evidence concerning one witness' ability to remember the amounts to which he testified) are merely invitations to reweigh the evidence and substitute our judgment for that of the district court. This we may not do. In addition, we note that the record is replete with evidence supporting the amount of drugs used to calculate Jackson's sentence under count I. The court was allowed to consider all drug transactions that were part of the same common scheme or plan as the offense of conviction, U.S.S.G. Sec. 1B1.3(a)(2), including the involvement of similar parties and the geographic and temporal relationships between the convicted offense and the relevant conduct in this case. United States v. Crawford, 991 F.2d 1328, 1331 (7th Cir.1993). The court heard evidence that Jackson was the central figure in a cocaine distribution ring centered at 1840 South 17th Street in Springfield, Illinois. Jackson supplied cocaine to various people, including Compton, Young, and Moore, and utilized many of the same techniques for distribution, including "front" or consignment arrangements, the use of beepers, and the use of the same "dope house" in Springfield. In addition, the amount of drugs used by the court in calculating Jackson's sentence was taken directly from testimony at trial and was included by the probation officer in Jackson's presentence report. We find more than adequate evidence to support the district court's findings in this case and therefore conclude that the district court did not commit clear error in calculating Jackson's sentence under U.S.S.G. Sec. 1B1.3.
 
 
 29
 Jackson next argues that the district court erred in failing to properly calculate his criminal history. Jackson makes two arguments here. First, he alleges that the use of prior convictions that predate the effective date of the Guidelines (November 1987) violate the ex post facto clause of the Constitution, and second, that the use of the specific prior convictions in this case violated the ten-year rule in U.S.S.G. Sec. 4A1.2. Again, however, we note that neither of these specific objections were raised in the district court. We therefore review these allegations for plain error. Wynn, 845 F.2d at 1442.
 
 
 30
 Jackson's ex post facto argument is meritless. As noted previously, the Guidelines violate the ex post facto clause only when an amendment occurs after the commission of the defendant's crime that works to the defendant's detriment. Seacott, 15 F.3d at 1384, 1386. Guidelines section 4A1.2(e), the section relevant to calculating the age of a prior conviction for purposes of calculating a criminal history score, was not amended or otherwise changed between January 28, 1988 (the commission of the crime) and August 19, 1990 (Jackson's sentencing). There can therefore be no ex post facto violation.
 
 
 31
 Jackson's ten-year allegation is equally meritless. U.S.S.G. Sec. 4A1.2(e) states
 
 
 32
 (1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. ...
 
 
 33
 (2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.
 
 
 34
 The government in this case tendered four prior convictions that occurred between February 11, 1980 and February 4, 1986. Jackson's offense in this case occurred on January 28, 1988. All were clearly within the ten-year time period contemplated by the Guidelines and therefore it was not error, let alone plain error, to have counted them in Jackson's criminal history.
 
 
 35
 Jackson next alleges that the district court erred in adding a two-level increase under U.S.S.G. Sec. 3B1.1(c) for Jackson's role in the offense. Section 3B1.1(c) states that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by 2 levels." Application Note 3 which follows this section further provides that
 
 
 36
 [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 37
 No one factor should determine liability for enhancement under this section. United States v. Skinner, 986 F.2d 1091, 1097 (7th Cir.1993). The central concern is the relative responsibility for the offense. Id. A district court's findings with regard to a defendant's role in the offense will be given due deference since " '[t]he district court is in the best position to assess the defendant's relative culpability vis-a-vis other participants in the offense.' " Id. (quoting Tetzlaff, 896 F.2d at 1075 n. 4).
 
 
 38
 In this case there was substantial evidence of Jackson's role as manager or supervisor of the specific offense committed on January 28, 1988. The record reveals that Jackson directed the sale of cocaine to agent Woods. Jackson asked Brownlee and Williams to meet him at the American Legion parking lot in Springfield. Jackson had earlier recruited Williams into the cocaine conspiracy and on the night in question directed him to sell to Brownlee, who was (unbeknownst to him) assisting agent Woods, a package containing cocaine. Jackson agreed to pay Williams for this service. Williams then paid over the proceeds of the sale to Jackson. Moreover, the record reveals that this arrangement was not uncommon. Jackson recruited others who operated on consignment. He generally planned the sales, kept the largest share of the proceeds, and controlled who was present and where the transactions would take place. The district court was not in error by increasing Jackson's offense level by two for his role in the offense.
 
 
 39
 Jackson also alleges error in the district court's decision to add two levels for obstruction of justice under U.S.S.G. Sec. 3C1.1. Section 3C1.1 reads as follows:
 
 
 40
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 41
 Application Note 3 following this section also provides
 
 
 42
 The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
 
 
 43
 (a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;
 
 
 44
 The district court's determination as to the applicability of an obstruction of justice enhancement will not be reversed unless it is clearly erroneous. United States v. Osborne, 931 F.2d 1139, 1153 (7th Cir.1991).
 
 
 45
 In this case, the record reveals that Jackson called Alfred Dawson, a resident at the Sangamon County jail, and asked him to injure Edgar Williams, also an inmate at the jail, because Williams was informing the police on Jackson. Jackson apparently offered to bond Dawson out of jail if he carried through with this act. The Guidelines make clear that attempting to threaten a co-defendant or witness violates this section. Rarely do we see a clearer example than what transpired in this case. There was no error in applying the enhancement here.
 
 
 46
 Finally, Jackson challenges the sufficiency of the evidence to sustain his convictions under both counts I and II. When reviewing the sufficiency of the evidence, we look to all of the evidence and all reasonable inferences that can be drawn from that evidence in the light most favorable to the government. United States v. Durrive, 902 F.2d 1221, 1225 (7th Cir.1990). We must determine whether any rational trier of fact could have concluded that Jackson was guilty of the crimes charged beyond a reasonable doubt. Id. We will overturn a verdict only when the record is devoid of evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt. Id.
 
 
 47
 In this case, Jackson was found guilty under count I of conspiracy to distribute cocaine. This court has defined a conspiracy as " 'a combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act.' " Id. (quoting United States v. Whaley, 830 F.2d 1469, 1473 (7th Cir.1987), cert. denied, 486 U.S. 1009 (1988)). "To sustain the charge of conspiracy to distribute cocaine, the government need only prove the existence of such a conspiracy and a participatory link with [Jackson]." Id. Circumstantial evidence may be the sole support for such a conviction, id., and we will affirm the conviction as long as there is substantial evidence, viewed in the light most favorable to the government, to sustain the conviction. Id. at 1229.
 
 
 48
 The evidence presented at trial more than adequately meets the above standard. Jackson created the conspiracy, recruited its members, and directed the times and locations of the various acts of distribution. Jackson was also the source of the cocaine and often distributed the cocaine on consignment. The jury could have easily and rationally determined the existence of a conspiracy and just as easily concluded that Jackson was an active participant in this conspiracy.
 
 
 49
 Jackson also challenges the sufficiency of the evidence on count II, distribution of cocaine. Since the trier of fact found that Jackson was guilty of conspiracy to distribute cocaine, however, Jackson's liability for distribution under count II attaches, without more, under Pinkerton v. United States, 328 U.S. 640, 647 (1946) (substantive offenses committed in furtherance of a conspiracy are attributable to members of the conspiracy for the purpose of holding each member responsible for separately charged substantive offenses). But even without Pinkerton liability, the record clearly reveals that there was ample evidence to convict Jackson on this count as well.
 
 
 50
 As a final matter, we acknowledge Jackson's complaint concerning the district judge's harsh words directed at him at sentencing. The district judge apparently looked upon Jackson as a bad apple calling him a destroyer, an animal, and a mad dog. While we do not doubt that Jackson was not a model citizen, we do not think that the federal bench is better served by restraint and civility in these matters.
 
 III. Conclusion
 
 51
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 It is clear in this circuit that Guideline amendments intending only to clarify, and not make substantive changes, may be considered in interpreting a Guideline provision even though the amendment was not effective at the time of the commission of the offense. United States v. Fiala, 929 F.2d 285, 290 (7th Cir.1991)
 
 
 [2]
 Our analysis here does not address the more basic question of whether a policy change in the Guidelines could as a matter of law violate the ex post facto clause where there has in fact been no change in the actual language employed in the Guidelines. We choose not to address the issue here where it is easily decided on other grounds